UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| LARRY DALE NICHOLS | ) | |
| | ) | |
| v. | ) | 1:04-cr- 68 / 1:06-cv-183 |
| | ) | *Edgar* |
| UNITED STATES OF AMERICA | ) | |

**MEMORANDUM**

Before the Court is a motion by Larry Dale Nichols ("Nichols") to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Nichols has raised two grounds for relief in his original § 2255 petition [Court File No. 1]. Nichols filed a motion for leave to amend his petition almost nine months later raising another claim of ineffective assistance of counsel [Court File No. 3]. The United States Attorney opposes both the original § 2255 petition and the proposed amendment [Court File No. 4]. For the reasons which follow, the Court has determined a hearing is not necessary and concludes that the § 2255 motion lacks merit, and the motion to amend is untimely; thus, both will be **DENIED** [Court File Nos. 1, 3]. Nichols is not entitled to any relief under § 2255.

**I.  Motion to Amend [Court File No. 3]**

In his motion to amend, Nichols' proposed claim is that counsel was ineffective for failing to argue his prior burglaries, which were used as predicates for the armed career sentencing, should have been counted as one prior felony conviction. Initially the Court observes that his claim is completely different from the two ineffective assistance of counsel claims he raised in his initial § 2255 motion—that counsel was ineffective for conceding his guilt during opening statement and

1

for failing to inform him of the possibility of entering into a plea agreement "for the lesser sentence of 180-month [sic] (the statutory mandatory/minimum), rather than the 288-month [sic] [he] received[.]" (Court File No. 1, Affidavit).

Rule 12 of the Rules Governing Section 2255 Proceedings in the United States District Courts provides for the application of the Federal Rules of Civil Procedure when the Court deems it appropriate to dispose of motions filed under these rules. First the Court must determine whether the amendment was timely filed because Nichols' proposed amendment is subject to the one year statute of limitations period applicable to a motion filed pursuant to 28 U.S.C. 2255. *See Oleson v. United States*, 27 Fed.Appx. 566 (6th Cir. Dec. 14, 2001), 2001 WL 1631828 *3(Unpublished). If the amendment is untimely filed, the Court looks to equitable tolling rules and Rule 15 of the Federal Rules of Civil Procedure in reaching its decision regarding the timeliness of the proposed amendment. If the amendment is barred by § 2255's one-year statute of limitation and is not subject to equitable tolling rules, then the Court must determine whether the amendment relates back under Rule 15(c) of the Federal Rules of Civil Procedure to Nichols' previous claims. *Mayle v. Felix*, 545 U.S. 644, 656-57 (2005).

The relation-back provision in the Rule 15(c)(2) of the Federal Rules of Civil Procedure provides that pleading amendments relate back to the date of the original pleading when the claim asserted in the amended plea "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." "Rule 15(c)(2) relaxes, but does not obliterate, the statute of limitations; hence relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Id.* at 659 (citations omitted). The Supreme Court observed that if claims asserted after the one-year period could be revived simply

because they related to the same trial, conviction, or sentence, AEDPA's limitation period would have slim significance. *Id*. at 662.

Nichols's motion to amend, which was filed on May 3, 2007, is untimely because it was filed more than one year after his judgment became final. "For the purposes of the limitations period of § 2255, 'a conviction becomes final at the conclusion of direct review.'" *Brown v. United States*, 20 Fed.Appx. 373 (6th Cir. 2001), *available in* 2001 WL 1136000 (quoting *Johnson v. United States*, 246 F.3d 655, 657 (6th Cir. 2001). If a defendant pursues direct review through to a petition for certiorari in the Supreme Court, direct review concludes when the Supreme Court either denies the petition for certiorari or decides the case. When a defendant pursues a direct appeal but does not petition the United States Supreme Court for certiorari, his judgment becomes final when the time expires for filing such a petition. *Clay v. United States*, 537 U.S. 522, 532 (2003). A petition for a writ of certiorari is timely when it is filed within ninety days after entry of the appellate court judgment. Rule 13 Supreme Court Rules. Nichols pursued an appeal but did not file a petition for a writ of certiorari [Crim. Court File No. 88].

The Sixth Circuit's disposition of Nichols case was filed on November 29, 2005 [Crim. Court File No. 40]. Therefore he had until February 27, 2006, in which to file a petition for a writ of certiorari. Thus, his judgment became final on that date and the one-year statute of limitation for filing a § 2255 motion expired on or about February 27, 2007. Since Nichols' motion to amend was filed on May 3, 2007, it is untimely.

Although Nichols' one year statute of limitations expired prior to filing his motion to amend, the Court must determine whether equitable tolling is appropriate in this case because the one-year

3

statute of limitation in § 2255 is subject to equitable tolling. *Dunlap v. United States*, 250 F.3d 1001, 1004 (6th Cir. 2001). In determining whether Nichols met his burden to invoke the doctrine of equitable tolling in this case, the Court considers the factors set forth in *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988): (1) Nichols' lack of notice of the filing requirement; (2) Nichols' lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) Nichols' reasonableness in remaining ignorant of the legal requirement for filing these new claims. *See Solomon v. United States*, 467 F.3d 928 (6th Cir. 2006); *Dunlap v. United States*, 250 F.3d at 1008. The Sixth Circuit has repeatedly made clear its view that "equitable tolling relief should be granted only sparingly." *See Amini v. Oberlin College*, 259 F.3d 493, 500 (6th Cir. 2001). Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control. *Graham-Humphreys v. Memphis Brooks Museum, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000). The motion contains no allegation that Nichols lacked notice of, or knowledge of, the filing requirement. Indeed, the motion presents no basis for equitable tolling. Since Nichols has failed to offer any explanation for the delay, the Court finds he has failed to demonstrate that equitable tolling is appropriate in his case.

In addition, Nichols' amendment does not escape the Antiterrorism and Effective Death Penalty Act ("AEDPA") statute of limitations by "relating back" to the claims in his timely filed original § 2255 motion because his amendment raises an entirely new argument that does not relate back to either of the ineffective assistance claims in his original § 2255 motion. *See Oleson v. United States*, 2001 WL 1631828 *3 (6th Cir. Dec. 14, 2001) (Unpublished). Amendments that seek to add new legal theories or present new claims based on different factual underpinnings are not

4

permitted. *Dean v. United States*, 278 F.3d 1218, 1221 (11th Cir. 2002). Nichols' claim that counsel was ineffective for failing to argue several burglaries for which he was convicted were, in effect, related and part of a single common scheme or plan is separate and distinct from the ineffective assistance claims presented in the original § 2255 motion. Thus, it does not relate back to the timely § 2255 motion. Thus, this untimely amendment is not allowed.

Accordingly, the Court **DENIES** Nichols' motion to amend because it is untimely, does not relate back to his § 2255 motion, and does not present appropriate circumstances to toll the statute of limitations [Court File No.3]. [1]

## II. Standard of Review

This Court must vacate and set aside the sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 4 of the RULES GOVERNING SECTION 2255 PROCEEDINGS IN THE UNITED STATES DISTRICT

---

[1] Even if the Court considered, on the merits, Nichols' claim that counsel should have argued his prior burglaries should have been counted as one prior felony conviction which it appears counsel raised during sentencing and on direct appeal, Nichols would not be entitled to any relief because he is bound by the opinion rendered in his direct appeal wherein the Court of Appeals for the Sixth Circuit concluded "Nichols was convicted of burglaries of different residences on separate dates during a sixteen-month period. Hence, Nichols was properly sentenced as a career criminal." Additionally, under the Guidelines, it is well-settled that a "crime spree" where a series of similar offenses are committed in a short period of time are considered separate offenses and do not constitute a "common scheme or plan" for purposes of the career offender calculations. *See United States v. Horn,* 355 F.3d 610, 612-13 (6th Cir.), *cert. denied.* 541 U.S. 1082 (2004). (Crim. Court File No. 40). Moreover, 18 U.S.C. 924(e), which is the statute which guided Nichols' sentence, only requires that the prior offenses be "committed on occasions different from one another[.]" The predicate offenses used for Armed Career Criminal purposes in Nichols' case, were each "committed on occasions different from one another[.]" 18 U.S.C. § 924(e)(1). Thus, this claim lacks merit.

5

COURTS, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveals the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the Court may summarily dismiss the § 2255 motion under Rule 4.

To prevail under § 2255, Nichols "must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir.1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)). "On collateral review, a trial error is deemed harmless unless it had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Fair v. United States*, 157 F.3d 427, 430 (6th Cir., 1998), *quoting Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993). "It is a 'well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal.'" *Fair,* 157 F.3d at 430, *quoting United States v. Frady* 456 U.S. 152, 166 (1982). A defendant must show a "fundamental defect" in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error which violates due process in order to prevail under 28 U.S.C. § 2255. *See Fair v. United States,* 157 F.3d at 430, *Gall v. United States,* 21 F.3d 107, 109 (6th Cir. 1994).

Under Rule 8 of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to determine after a review of the answer and the records of the case whether an evidentiary hearing is required. If the motion to vacate, the answer, and the records of the case show conclusively that Nichols is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir.1986).

### III.  Procedural Background

On April 13, 2004, a federal grand jury sitting in the Eastern District of Tennessee at Chattanooga returned a one-count Indictment charging that, on or about December 15, 2003, Nichols, who had previously been convicted of a felony offense, knowingly possessed a Taurus 9 mm semiautomatic pistol, in violation of 18 U.S.C. § 922(g)(1).  At the time of his indictment, the defendant was serving a sentence in the Tennessee Department of Correction.  He was arrested by federal authorities on July 19, 2004, and taken into federal custody on a writ of habeas corpus ad prosequendum.

Nichols exercised his right to jury trial on September 21, 2004, and the jury found him guilty on the one-count indictment.  The Court sentenced him as an armed career criminal to 288 months imprisonment (Crim. Court File No. 40).  Nichols pursued a direct appeal and his conviction and sentence were affirmed by the United States Court of Appeals for the Sixth Circuit on November 29, 2005 (Crim. Court File No. 40).  Nichols filed this § 2255 motion on or about June 14, 2006.

### IV.  Factual Background

On December 15, 2003, an officer of the Cleveland, Tennessee Police Department observed Nichols and a second individual sitting in a vehicle parked at the Budget Inn on south Lee Highway in Cleveland, Tennessee.  The vehicle had its lights off and was in the motel parking lot.  The officer pulled through the parking lot and both individuals exited the vehicle and Nichols walked toward the officer's vehicle, so he put his vehicle in park and got out to speak with Nichols.  The officer observed that Nichols' eyes were extremely bloodshot and that he smelled strongly of marijuana.  Nichols told the officer he was working undercover narcotics for Detective Jimmy Smith.  The officer frisked Nichols and recovered a magazine for a 9mm pistol, along with a small bag of

7

marijuana, in his pocket. Upon questioning, Nichols, a multiple felony convict, revealed that a gun was in his vehicle which the officer located on the driver's side wrapped in a towel (Crim. Court File No. 25, pp. 16-24)

**V.     Analysis**

Nichols raises two alleged instances of ineffective assistance of counsel: (1) counsel conceded his guilt during opening statement and (2) counsel ineffectively advised him to go to trial rather than informing him of the possibility of entering into a plea agreement for a 180 month sentence.

*A.     Ineffective Assistance of Counsel*

The Supreme Court, in *Strickland v. Washington*, 466 U.S. 668 (1984), established the criteria for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious. The *Strickland* test requires that a defendant demonstrate two essential elements: (1) counsel's performance was deficient, *i.e.*, below the standard of competence demanded of attorneys in criminal cases; and (2) counsel's deficient performance prejudiced the defense, *i.e.*, deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id*. at 687-88; *see also Flippins v. United States*, 808 F.2d 16, 17-18 (6th Cir.), *cert. denied*, 481 U.S. 1056 (1987). As the Sixth Circuit explained in *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992), *cert. denied*, 508 U.S. 975 (1993): "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Sims v. Livesay*, 970 F.2d 1575, 1579-80 (6th Cir. 1992).

8

For the reasons explained below, Nichols is unable to demonstrate counsel was ineffective for not raising the claims he raises in this § 2255 motion.

*1.     Counsel Conceded Guilt*

Nichols contends counsel conceded his guilt during his opening statement, which lessened the burden of proof necessary to sustain a conviction. Nichols attacks three statements made by trial counsel. First, Nichols complains that, during opening statement, counsel told the jury he was a convicted felon prior to the government reading into the record the stipulation regarding Nichols prior felony conviction. Nichols argument that "this statement made by counsel prior to the stipulation being read into the record was highly prejudicial and set a pre-conceived idea regarding guilt in the Jury's mind" is frivolous (Court File No. 2, p. 5).

The government notified the jury, during its opening statement, prior to defense counsel's opening statement, that Nichols and the United States had stipulated to the fact that he was a convicted felon at the time this incident occurred. (Crim. Court File 25, p. 3). Consequently, Nichols suffered no prejudice from his attorney's statement that he was a convicted felon. Nichols is unable to demonstrate this statement by counsel deprived him of a fair trial rendering the outcome of the trial unreliable.

Second, Nichols contends "counsel's statement during the opening regarding petitioner's family were criminals, therefore, petitioner was a criminal[,]" prejudiced the jury against him. (Court File No. 2, pp. 5-6). First, this is an inaccurate recitation of counsel's statement. Counsel, explaining Nichols undercover activities, stated "[o]ne of the reasons that Larry Nichols is a guy that would know about that [drug dealing and stolen property] is because some of his family members have been involved in misconduct over the years independently of his misconduct." (Crim.

9

Court File No. 25, p. 10). This statement did not prejudice Nichols because it was the introductory statement to Nichols' defense. Although, the statement was probably unnecessary, counsel had been explaining the background of Nichols' alleged position as an informant for law enforcement, and this statement was an introduction to his defense. Counsel explained that Nichols' had been solicited to obtain information about stolen property and drug dealers and presented his defense:

> One of the reasons that Larry Nichols is a guy that would know about that [stolen property and drug dealers] is that because some of his family members have been involved in misconduct over the years independently of his misconduct. He knew a fellow named Lynn Embry, a fellow named Donnie Nichols, and he knew his stepmother, Sandra Dowdy, Sandra Cooley, various other names. She's been previously his stepmother, Sandra Nichols.

(Crim. Court File No. 25, pp 10-11). Counsel then presented the specific facts of Nichols' defense including the third statement (the italicized statement below) which Nichols challenges and contends is the most damaging:

> So, [Nichols] attempts to communicate with Mr. Smith [Detective Smith], is unable to do so, unable to make contact. And he goes with Donnie Nichols over to where Lynn Embry is staying at the Budget Inn with another couple next door to his cousin, I guess cousin Donnie Nichols Donnie Nichols. Donnie knows about all of this stuff that's going on as well.
>
> *And he goes over there to get Mr. Embry to pay his stepmother with this stolen gun that he's got, so that he can turn it in.* He never touches the gun. Not one fingerprint, not a smudge off of him, not one hair, not anything at all ever associated with him, at least as far as we know at this point. The government doesn't even contend that he's touched that gun or has fingerprints on it.
>
> In terms of them sitting there in the road, in the parking lot, that's right. Mr. Embry is inside of the hotel room, which is next door to Mr. Donnie Nichols' motel room. Mr. Embry brings the gun out wrapped in a towel, puts it in the floorboard of the vehicle, and they're sitting there waiting . . .

(Crim. Court File No. 25, pp 11-12). According to Nichols, counsel conceded possession in his

opening statement.

The purpose of an opening statement by defense counsel is to give a broad outline of the case and the theory of the defense to the jury. *Government of Virgin Islands v. Turner*, 409 F.2d 102, 103 (3rd Cir. 1968) ("The purpose of an opening is to give the broad outlines of the case to enable the jury to comprehend it."). Counsel's strategic decision to concede certain facts, to maintain credibility with the jury is reasonable under the performance prong of *Strickland*. *See Clozza v. Murray*, 913 F.2d 1092, 1099 (4th Cir. 1990) ("The strategy to maintain credibility with the jury was reasonable . . . Given that these remarks were largely attributable to trial strategy, we cannot, in keeping with *Strickland*, second-guess counsel's tactical choices."); *see also Valenzuela v. United States*, 217 Fed.Appx. 486 (6th Cir. Feb. 16, 2007), *available in* 2007 WL 505783 (partial admission was reasonable trial strategy in light of government's substantial evidence); *Bell v. Evatt*, 72 F.3d 421, 428 (4th Cir.1995) ("It was important for the defense to retain some credibility . . . the decision to concede his guilt was a rational one..."); *also see Hayes v. Cain,* 272 F.3d 757, 762 n. 12 (5th Cir. 2001) ("Where counsel acknowledges, in closing argument, the overwhelming weight of evidence that has been admitted against this client, even conceding his client's guilt, we have found that such an acknowledgment of the obvious may be a trial tactic that does not reach the level of ineffective assistance.").

The excerpts about which Nichols complains, when read in context, are reasonable trial strategy. Counsel did not concede that Nichols was guilty as charged, or of any crime at all. Counsel specifically denied that the weapon was Nichols' and explained the only reason it was in the vehicle in which he was sitting was because he knew it was stolen and he was going to give it to Detective Smith. Nichols' counsel did what he was suppose to do during opening

11

statement—give the jury a broad outline of the case and the theory of the defense. Counsel explained that although Nichols had a prior criminal record, and although his family had been involved in criminal activity, in this situation, he was not involved in criminal activity because he was working for law enforcement.

Counsel's opening statement was Nichols' defense and what he told the arresting officer—that he purposely obtained the stolen weapon so that he could turn it into law enforcement because he was working undercover for Detective Jimmy Smith. In line with counsel's opening statement, the proof at trial demonstrated that after the officer found the pistol clip in Nichols pocket, Nichols stated he did not have a gun on his person but that it was on the driver side in the vehicle (where Nichols had been sitting) and the weapon was for Detective Smith(Court File No. 25, p. 25-36; 40).

Additionally, Detective Smith confirmed that Nichols agreed to assist him in making a drug bust, and that he called Detective Smith on one occasion. Nichols failed, however, to keep in touch with Detective Smith as directed, and had no contact for at least two weeks prior to this incident. Detective Smith had no knowledge that Nichols was obtaining this firearm. In addition, Detective Smith indicated he expected Nichols to assist in narcotic cases, not stolen guns.

Counsel did not concede Nichols' guilt but rather, employed a reasonable trial strategy in light of the substantial evidence against Nichols. Although the trial strategy ultimately proved unsuccessful, it presented the jury with, arguably, a plausible reason to acquit Nichols. Thus, counsel's trial strategy did not amount to counsel conceding Nichols' guilt. Acknowledging Nichols' and his family's criminal background, and explaining his defense as to how and why the

12

gun was located in the vehicle in which he was sitting in the driver's seat, was not ineffective on counsel's part, did not prejudice Nichols, and does not warrant any relief under § 2255.

There is "a strong presumption" that counsel's conduct was reasonable and that counsel's representation did not fall below "an objective standard of reasonableness" under "prevailing professional norms." *Strickland*, 466 U.S. at 688. Even if Nichols can overcome the presumption that counsel's performance was effective, he must still demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction," judicial scrutiny of counsel's performance is highly deferential. *Id.* at 689.

It is valid trial strategy for an attorney to acknowledge, to the jury, facts against his client that he knows the government will be able to prove or that are necessary to explain his defense. In addition, Nichols neither testified nor presented any evidence; thus, the only way for the jury to be apprised of his defense was by counsel's opening statement. In order to present Nichols' defense that he obtained the weapon for legal and legitimate reasons, counsel had to explain his version of how he came into possession of the weapon. In conceding Nichols knowledge that the weapon was in the vehicle, which was clearly demonstrated by the evidence, and explaining how and why the weapon was in the car, which supported Nichols' original explanation to law enforcement that he obtained the gun for them, counsel strategically decided that making such acknowledgments would improve the possibility that the jury would find Nichols' defense credible.

Nichols was not prejudiced by counsel's concessions that he was a felon and criminal because the government had previously stated it and the evidence proved his concessions—Nichols stipulated that he was a convicted felon. Likewise, Nichols was not prejudiced by Counsel's

13

explanation of how the weapon was placed in the car because it was a necessary part of Nichol's defense. Counsel's strategic decisions did not amount to deficient performance. Moreover, because there was a substantial amount of evidence of Nichols' guilt concerning the possession of the weapon, Nichols fails to establish that he was prejudiced by his counsel's concessions. Nichols has not presented any evidence to undermine the Court's confidence in the jury verdict of guilty.

In sum, defense counsel's strategic decision to build credibility with the jury by admitting to the prior conviction and criminal conduct, and the virtually inescapable conclusion that the weapon was in the vehicle with Nichols' knowledge, but explaining the weapon was in the vehicle for the purpose of turning it into law enforcement, while contesting possession, was not unreasonable. The fact that this strategy ultimately was not successful is not the standard by which an ineffective assistance of counsel claim is evaluated.

Accordingly, because, reviewing counsel's performance with a high degree of deference and without the distorting effects of hindsight, the Court finds counsel's concessions and admissions in his opening statement were part of a reasonable trial strategy, and additionally, because Nichols has not demonstrated a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different," he is **DENIED** any relief on his claim that counsel rendered ineffective assistance of counsel during opening statement. *Strickland*, 466 U.S. at 694.

### 2. *Counsel's Advice to Proceed to Trial*

Nichols claims counsel rendered ineffective assistance for advising him to go to trial rather than informing him of the possibility of entering into a plea agreement where he would have received a 180-month sentence rather than the 288-month sentence he received. Nichols claims that

14

since the evidence against him was overwhelming, counsel was ineffective for advising him to go to trial rather than negotiating a 180-month plea agreement. In his affidavit, Nichols avers that "had counsel informed me of the possibility of a plea agreement in which I would plea guilty for the lesser sentence of 180 months (the statutory mandatory/minimum), rather than the 288-month I received, I would have insisted on pleading guilty." (Court File No. 1, Attachment 1). It is important to note that Nichols is not claiming that he and counsel had no discussions regarding the benefits and consequences of entering a guilty plea versus going to trial, but rather he contends that had counsel informed him that he could have pleaded guilty to a sentence of 180 months, he would have done so. The Government responds that this is not a case where a plea offer was on the table or a case where they would have offered a 180-month sentence.

Indeed, the Court, not the government, determines the sentences of criminal defendants based on the Sentencing Guidelines. Thus, not only was such a plea not offered by the government, even if it had been offered, the Court would not have accepted such a plea, as the sentence is determined by the Court only after it is apprised of a defendant's sentencing guidelines. Based on Nichols prior criminal history, the Court would not have entertained sentencing Nichols to a sentence of 180 months.

Nichols was charged in a one-count indictment with being a felon in possession of a firearm. Therefore, Nichols had a choice of pleading guilty as charged, or proceeding to trial. Had Nichols pleaded guilty as charged, contrary to his contention, he would not have received a 180-month sentence. Rather, had he pleaded guilty, his total offense level would have been reduced three levels, to 30 for acceptance of responsibility, and his criminal history category of VI would have remained the same, and his Guideline range would have been 168-210 months, but with the

15

mandatory minimum it would have been 180-210 months. The Court sentenced Nichols at the top of his Guideline range and would have done so had he pleaded guilty since he had fifty-nine (59) criminal history points. In addition, the government has responded that, as it indicated during Nichols sentencing hearing, it likely would have filed a motion for an upward departure based on the under-representation of his criminal history points, had he pleaded guilty. Likewise, considering Nichols extensive record and the fact that at the time of instant offense, he was on parole and the instant offense was committed less than two years after being released from custody, the Court probably would have ruled favorably on a motion for an upward departure.

Consequently, Nichols claim that he would have pleaded guilty "had counsel informed me of the possibility of a plea agreement in which I would plea guilty for the lesser sentence of 180-month" is without merit because the government did not offer such a plea agreement and the Court would not have accepted a guilty plea to a sentence of 180 months. Thus, not only has Nichols failed to demonstrate counsel's performance was deficient, he has failed to demonstrate he was prejudiced.

Accordingly, Nichols is **DENIED** relief on his claim that trial counsel was ineffective for failing to inform him "of the possibility of a plea agreement in which [he] would plea guilty for the lesser sentence of 180-month (the statutory mandatory/minimum), rather than the 288-month sentence [he] received." (Court File No. 1, Affidavit).

## VI. Conclusion

Nichols has failed to present any facts which establish his sentence is subject to collateral attack under 28 U.S.C. § 2255. Nichols is not entitled to any relief under § 2255 and a separate judgment will enter **DENYING** his motion.

An appropriate judgment order will enter.


                             */s/ R. Allan Edgar*
                             R. ALLAN EDGAR
                      UNITED STATES DISTRICT JUDGE